ARETA GUTHREY SBN 122245
IN PRO PER
7207 YARROW WAY
CITRUS HEIGHTS CA
707-363-4482

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALETA GUTHREY**, a conserved adult, through her Conservator, Areta Guthrey; and **ARETA GUTHREY**, an individual,<br><br>      Plaintiffs<br><br>  vs.<br><br>**ALTA CALIFORNIA REGIONAL CENTER**, a California non-profit corporation; **ON MY OWN INDEPENDENT LIVING SERVICES, INC.**, a California corporation; **S.T.E.P., INC.**, a California corporation.<br><br>      Defendants | **Case No.  2:18-cv-01087-MCE-EFB**<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, THE UNRUH ACT, THE REHABILITATION ACT OF 1973, BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>Complaint filed:  May 01, 2018<br>Judge:  Hon. Morrison C. England, Jr. |

## JURISDICTION

1.        Jurisdiction of this court is proper under 28 U.S.C. 451, 1331, 1337, and

1343.  This action is brought under Sections 12182 et seq of the Americans with

Disabilities Act, 42 U.S.C. 12101 et seq – incorporating by reference the

remedies, procedures,  and rights under the Rehabilitation Act, 29 U.S.C. 794

1

and 794a, and under Section 505 of the Rehabilitation Act, which enforces Section 504 of the Rehabilitation Act, incorporating the remedies, rights and procedures set forth in Section 717 of the Civil Rights Act of 1964, including the application of Sections 706(f) through 706 (k), 42 U.S.C. 2000e-5(f)-(k).

2.    The defendants all have a principal place of business within the Eastern District and all of the actions of all of the defendants were and are taking place in the Eastern District of California, Sacramento Division.

**THE PARTIES**

3.    Plaintiff Aleta Guthrey ("Aleta") is a severely disabled young woman.  She has been a consumer of the California Regional Center system since her birth in 1995.  She has been diagnosed with microcephaly, a physical and intellectual impairment that substantially limits all of her major life activities.   She does not speak, write, or eat by mouth.  She takes nutrition by way of a gastrostomy tube. She has protective supervision services because she is not safe on her own. Aleta is otherwise qualified as an individual with a disability under all state and federal laws mentioned herein and is qualified to access defendants' programs or activities.

4.    Plaintiff Areta Guthrey ("Mother") is Aleta's mother.  Until May 1, 2020 Mother cared for Aleta full time, and has served as her Conservator since Aleta turned 18.  Aleta and Mother are both residents of Sacramento County.  Plaintiffs are expressly authorized under Sections 12132, 12133 and 12188 of the ADA to bring this action.

5.    Mother is a resident of Sacramento County where she pays sales, income and real property taxes.

6.    At all relevant times, Alta California Regional Center has been a non-profit California corporation, established pursuant to the California Welfare and Institutions Code and acting at all times as an agent of the state and under color of law.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

7.     Alta contracts with the California Department of Developmental Services, pursuant to the Lanterman Act, to fulfill the State's obligations to people with developmental disabilities in 10 counties, including Sacramento.  Alta's principal place of business is at 2241 Harvard St., Suite 100, Sacramento CA  95815.

8.     Alta is a public accommodation within the meaning of the ADA.

9.     At all relevant times Alta has received state and federal funds.

10.     On My Own Independent Living Services is a private, for-profit California corporation with its principal place of business at 6939 Sunrise Blvd., Citrus Heights, CA  95610.  On My Own is a public accommodation within the meaning of the ADA.  At all relevant times On My Own has received state and federal funds.

11.     On My Own was and is a DDS approved vendor of regional center services.

12.     STEP is a private, for-profit California corporation with its principal place of business at 2330 Glendale Lane, Sacramento, CA  95825.  STEP is a public accommodation within the meaning of the ADA.  At all relevant times STEP has received state and federal funds.

13. STEP was and is a DDS approved vendor of regional center services.

## LEGAL FRAMEWORK
### The Lanterman Act

14.     The Lanterman Developmental Disabilities Services Act (Lanterman Act), is a comprehensive statutory scheme which sets out the rights of people with developmental disabilities in California, and the responsibilities of the State, the regional centers and their vendors towards such individuals.  The Lanterman Act set up a system for providing services and supports for people with developmental disabilities, establishing 21 Regional Centers throughout the state.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

15.     The purpose of the statutory scheme is twofold: to prevent or minimize the institutionalization of developmentally disabled persons and their dislocation from family and community, and to enable them to approximate the pattern of everyday living of non-disabled persons of the same age and to lead more independent and productive lives in the community.

16.     Pursuant to this scheme, the California Department of Developmental Services ("DDS") contracts with the regional centers, which agree to provide non-discriminatory services and to uphold state and federal law.

17.     The regional centers then enter into contracts with vendors who agree to comply with all laws in the execution of their contracts.

18.     All of the regional center and vendor contracts are subject to strict requirements, regulations, and approval by the Department of Developmental Services (DDS), which was established as part of the California Health and Human Services Agency.

19.     The regional centers, vendors, and the DDS work as one, making all the rules and decisions for people with developmental disabilities.  All of the vendor contracts must go through both the regional center and DDS.

20.     The Lanterman Act provides for the provision of supported living services (SLS), which are direct personal services provided to people with developmental disabilities in their own homes.

21.     Supported Living vendors provide confidential, private and specialized direct services to consumers by recruiting, hiring, training, and paying the caregivers who are essential to Aleta's safety and well-being.  Vendors also help consumers to choose a home, prepare meals and assist with financial matters.

22.     Supported Living agencies have a government legislated monopoly on SLS services.  Regional centers can only contract for SLS services through approved vendors and the DDS will not pay for any services which are not contracted for through a regional center and an approved vendor.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

23.     Vendors may not initiate or provide any new or updated services for clients until a Regional Center has issued a duly executed authorization to purchase services.

24.     Regional centers provide direct services to consumers and their families and caregivers such as case management, identification, selection, and utilization of service providers, maintaining an emergency response system, assist in securing services and supports for consumers

25.     Each consumer must have a designated service coordinator who is responsible for planning and providing or ensuring that needed services are available to the individual and family.

26.     Services provided to regional center consumers such as Aleta are funded through a combination of state general fund dollars and federal reimbursements under Title XIX Medi-Cal, Medicaid, Home and Community Based Waivers and other funds.

27.     On information and belief, plaintiffs allege that regional center service coordination services are funded 50% by state general funds and 50% targeted Medicaid case management funding.

**ANTI DISCRIMINATION LAWS**
**The Americans with Disabilities Act and the Unruh Act**

28.     In enacting the ADA, Congress sought to address the systemic discrimination against people with disabilities, retaliation for advocacy on their behalf and segregation.

29.     More than 20 years ago, the United States Supreme Court held that people with disabilities were entitled, under the integration clause of the Americans with Disabilities Act, to live in their communities in homes of their own, with supported living services.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

30.     Title III of the ADA prohibits places of public accommodation from discriminating against the individuals with disabilities whom they serve.

31.     Discrimination under the ADA includes, *inter alia;*

denial of participation in programs or services;

unequal treatment or separate programs;

failure to administer services in a non-discriminatory manner; and,

failure to provide services in the least restrictive environment.

32.     ADA regulations also prohibit discrimination caused by providing different or separate services to individuals based on the severity of their disability, unless necessary for the services to be effective.

33.     The ADA specifically makes it unlawful for places of public accommodation to retaliate against any person for advocating on behalf of a person with disabilities who is protected under the ADA.

34.     The Unruh Act is California's civil rights act that prohibits discrimination against people with disabilities by any business establishment.  A violation can be shown by proving a violation of the ADA, but an ADA violation is not required for recovery.

**Section 504 of the Rehabilitation Act of 1973**

35.     Section 504 sets forth similar protections against discrimination by recipients of federal funds, such as the defendants in this case, including prohibiting unnecessary segregation.

36.     Defendants have discriminated against plaintiffs by failing to provide services in the most integrated setting possible.

**FACTUAL BACKGROUND**

37.     Aleta Guthrey is a young woman with developmental disabilities as a result of microcephaly.  She was referred to the regional center system in 1995, before leaving the hospital after her birth.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

38.      Mother is a single mother, with three children with developmental disabilities, two of whom are regional center consumers.

39.      Mother suffers from arthritis in her hands, knees, shoulders and back. This has been confirmed by x-ray.

40.      It is physically exhausting and painful as well as emotionally devastating for Mother to care for Aleta's physical needs knowing that she cannot do as much as she would like to do for her daughter.

41.      Mother also suffers from bipolar disorder and is reliant on medication to control the symptoms of that disease.  Mother tires easily and is unable to keep pace with Aleta's needs.  All defendants were well aware of these facts and acted with reckless disregard and malice towards plaintiffs, knowing that a failure to provide contracted for services would place Aleta's health and safety at risk, and cause severe emotional harm as a result.

42.      All of this information is contained in the files of the regional center, and was passed on to the defendants when Aleta was referred for services.  Mother also informed the defendants of these issues.  Defendants were well aware of the damage to this family that would be caused by their failure to honor their commitments.

43.      In 2014, Aleta's family moved to Citrus Heights, and Aleta became a client of the Alta California Regional Center.  At that time, Mother began discussions with Aleta's service coordinator at Alta to provide Supported Living Services for Aleta in her own home.

44.      Alta's polices, communicated to Mother, are that people with feeding tubes are not eligible for certain types of respite or personal attendant care.  Aleta was also not eligible for supported living services that would help keep her in the community as long as she lived with her mother.  As a result, Aleta has been at risk of institutionalization due to her gastrostomy tube.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

45.     More than once, Alta informed Mother that if Aleta was not cared for in the family home, she would be placed in an institution such as an ICF/N.

46.     In 2016, plaintiff Areta Guthrey ("Mother") was introduced to On My Own representative Mary McGlade at the Alta California Regional Center offices.

47.     Mother signed numerous documents which included a contract for On My Own Independent Living Services to provide Supported Living Services such as locating a home and hiring personal caregivers for Aleta through Alta.

48.     In April of 2017, Mother was told by Mary McGlade that a roommate had been found for Aleta and that the two of them should meet.  They met, and it was agreed that Mother would tour the apartment that was supposed to be available and approve the arrangement, which she did in April, 2017.

49.     Mother then bought furniture for Aleta and began preparing for Aleta to move into her own apartment with a roommate, both supported by On My Own.

50.     A few days later, Ms. McGlade informed Mother that the old roommate was refusing to leave the apartment, so Ms. McGlade suggested that Aleta and the other woman should find a new place to move into together.  Mother immediately began searching for housing, and sent several suggestions to On My Own.  All of Mother's correspondence went unanswered.

51.     At the same time, Aleta's service coordinator at Alta California Regional Center wanted to place a third young woman into the home with Aleta and the first woman, delaying the process which had already been agreed upon.

52.     Mother then found several 3-bedroom houses, which were less expensive and in better neighborhoods than the apartments being suggested by On My Own.

53.     Suddenly, at the end of April, 2017, Ms. McGlade told Mother that On My Own was pushing everything back by two weeks to accommodate a woman who had just come into the process.  The first potential roommate met with the third

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

woman in a gathering scheduled by On My Own. Aleta and Mother were excluded from this meeting.

54.     On April 30, 2017, Mother expressed her disappointment that she and Aleta had been left out of the meeting with the third roommate, that Mother's texts and emails with recommendations for housing went unanswered, and that Aleta was being pushed out of her potential housing.

55.     In an immediate and terse note on May 1, 2017, Ms. McGlade notified Mother that On My Own was terminating services for Aleta in retaliation for Mother's advocacy on Aleta's behalf in violation of several state and federal civil rights laws.

56.     At no time had anyone at On My Own, including Ms. McGlade, expressed any difficulty or issues with Mother.

57.     Mother then contacted Aleta's service coordinator at Alta, who told her, in writing, that the vendors have an absolute right to discriminate and determine who their clients will be.

58.     A few months later, in the summer of 2017, plaintiff Aleta was referred to defendant STEP for Supported Living Services through Alta California Regional Center. A representative of STEP came out to the plaintiffs' home and met with plaintiffs.

59.     Mother executed the necessary documents and entered into a contract with STEP to provide SLS services for Aleta, including locating a suitable home and hiring caregivers for Aleta.

60.     A few weeks later, Mother was informed that Aleta's case manager at STEP had been hired by the regional center and was leaving STEP immediately.

61.     Alta knowingly and intentionally hired away an individual who was known to be providing vital services to Alta consumers without any assistance or program to aid in the transition of Alta's consumers and avoid harm.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

62.     Aleta's case was reassigned, and Aleta and Mother went to the STEP office to meet the new STEP representative.

63.     Although the previous STEP representative told plaintiffs that Aleta was next in line to receive housing, the new representative told plaintiffs that they would have to wait in line on her case load and that no provision would be made for the fact that Aleta had already been waiting several months for STEP to fulfill its contract.

64.     Aleta's regional center service coordinator then informed Mother that STEP had informed him that Aleta would not be up for consideration for services until after Christmas 2017.

65.     Mother contacted Jacquie Dillard-Foss, the CEO of STEP, and asked if there was anything that could be done to move Aleta forward.  In her email, Mother was explicit in explaining to Ms. Dillard-Foss that Aleta and Mother were in crisis and that the situation was not safe.  Both plaintiffs were not sleeping and Aleta was in danger when she was not supervised.  Aleta was not receiving adequate supervision and Alta would not increase her hours as long as Aleta lived at home.

66.     Ms. Dillard-Foss was, therefore, well aware that failing to honor the SLS agreement would cause severe harm and distress to plaintiffs, which it in fact did.

67.     In response, Ms. Dillard-Foss agreed to look into the situation.  She never followed up or had anyone else send more information.  Two months later, in November, 2017, Mother sent another email asking about the status of SLS services for Aleta.  Five days later, Mother was contacted by the regional center service coordinator, not STEP, and informed that STEP was refusing to provide services.

68.     The email which STEP sent to Alta to inform the service coordinator of their decision was clear about the fact that Aleta was being denied services because of Mother's advocacy and "philosophy", and because of Aleta's care needs.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

69.     At no time did anyone at STEP raise these issues with Mother.

70.     This email was sent to Alta Regional Center by Tammy Smith, the SLS Program Manager at STEP.

71.     Ms. Smith's email stated that STEP was turning down the referral from Alta, but Mother had already signed the documents and met with the representatives.  The referral had already been accepted and executed.

72.     Alta had scheduled a meeting for SLS providers shortly before STEP's rejection email.  Mother attempted to sign up for the meeting, hoping to learn more about the process.  Alta refused to allow Mother to attend, and told her that the meeting was for current vendors only.  Mother is informed and believes that either Tammy Smith or Jacquie Dillard-Foss attended that meeting with representatives of On My Own, who intentionally influenced STEP's decision to reject Aleta.

73.     In the beginning of 2020, plaintiff Areta Guthrey attended a vendor orientation course at Alta's Harvard Avenue office to become a SLS vendor on her own, because Alta was refusing to provide SLS services.

74.     Shortly after that orientation, a vendor "suddenly appeared" and a plan was put into place and quickly executed.

75.     On May 1, 2020, Aleta moved into her own home in the community with two caregivers.  Aleta's supervision hours were increased to 720 hours per month and raised Aleta's level of services to a substantially higher level.

76.     Alta violated its obligations to plaintiffs by failing to enforce the contracts between itself and On My Own and STEP, to provide non-discriminatory services.

77.     The unnecessary segregation and isolation of the plaintiffs severely diminished their everyday life activities, including family relations, social contacts, work options, economic independence, educational advancement and cultural enrichment.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**ALTA CALIFORNIA REGIONAL CENTER**

78.      Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

79.      This cause of action is brought by all plaintiffs against defendant Alta California Regional Center.

80.      Plaintiff Aleta Guthrey is a person with developmental disabilities.

81.      Areta Guthrey is also a person with disabilities by virtue of her arthritis and brain disorder.

82.      Both plaintiffs are entitled to the services and protections of Title III of the Americans with Disabilities Act to be provided in a non-discriminatory manner.

83.      Alta is charged with the direct delivery of, inter alia, service coordination, case management, counseling, arranging supports and services with vendors and generic resources, oversight of services, and quarterly, semi-annual, and annual meetings with consumers and their IPP teams.

84.      Alta is a necessary fixed point of contact for people with developmental disabilities to obtain access to the supports and services they need.  The only way for consumers with developmental disabilities to receive services is through the regional center and an approved vendor.

85.      The DDS will not pay for services that are not provided through a regional center and an approved SLS vendor.

86.      Alta's services were necessary for Aleta to obtain supported living services in her own home.

87.      Plaintiffs went through the process of obtaining supported living services through Alta.

88.      Alta engages in all of the administrative tasks to vendorize outside agencies like On My Own and STEP.  Alta designs and provides vendor registration and orientation meetings at its offices for all potential vendors.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

89.     Alta representatives held meetings at Alta's offices at which Aleta's needs and desires were assessed and discussed and the necessary forms were completed to outline the terms of the services that would be provided by Alta and the vendors for Aleta's supported living.

90.     Alta located, negotiated, and prepared and entered into contracts with, On My Own and STEP to provide personal supported living services to Aleta which would allow Aleta to secure her own home, and to provide the actual supports needed to live in her own home.

91.     Alta assessed Aleta's needs several times through observation and discussion.

92.     Supported living services were ordered directly by Alta for the benefit of the plaintiffs in order for Aleta to live in her own home.

93.     Alta made payments to the other defendants for personal services rendered on behalf of plaintiffs to make supported living possible.

94.     Alta facilitated meetings between On My Own and STEP, and facilitated Aleta's circle of support for the development of supported living services.

95.     Alta provided direct case management, and contracted for respite, and other personal services for the plaintiffs.

96.     Alta facilitated community participation services and attended IEP meetings at Aleta's school as part of their ongoing assessment and monitoring duties.

97.     Alta is required to provide information and education services, directly facilitate the use of generic and cost-effective services for consumers and monitor and ensure the quality of services provided to consumers.

98.     Alta service coordinators work in the Alta offices to provide case management services.  They made phone calls, prepared contracts, and sent

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

emails to vendors and service providers to create a supported living arrangement for Aleta.  Supported Living Services cannot be obtained any other way.

99.     Alta violated the ADA by failing to provide equal access to services through enforcement of its contracts with On My Own and STEP

100.     Alta violated the ADA by discriminating against Aleta by denying her participation in Alta's services because they entered into contractual arrangements with vendors who discriminated on the basis of disability.

101.     Alta also violated the ADA by denying Aleta the equal benefit of its programs and services directly through its own actions of maintaining policies which allow discrimination by its vendors; and, indirectly through contractual arrangements with vendors who discriminated against her.

102.     Alta violated the ADA by providing services that were separate because of her gtube, and by contracting with vendors who discriminated against Aleta on the basis of her disability.

103.     Alta violated the ADA by failing to provides services to Aleta in the most integrated setting possible which is a home of her own.

104.     Alta used administrative methods that had the effect of discriminating by maintaining a policy that its vendors would be permitted to discriminate against regional center clients at their own whim.

105.     Plaintiffs were foreseeably harmed emotionally and financially by Alta's conduct.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## ON MY OWN

106.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

107.        This cause of action is brought by all plaintiffs against defendant On My Own.

108.        Plaintiff Aleta Guthrey is a person with developmental disabilities.

109.        Areta Guthrey is also a person with disabilities by virtue of her arthritis and brain disorder.

110.        Both plaintiffs are entitled to the services and protections of Title III of the Americans with Disabilities Act to be provided in a non-discriminatory manner.

111.     On My Own is a provider of direct personal supported living services to consumers of the regional centers, including:

Assistance with selecting and moving into a home;
Choosing personal attendants and housemates;
Acquiring household furnishings;
Common daily living activities and emergencies;
Becoming a participating member in community life; and,
Managing personal financial affairs, as well as other supports.

112.     All of the services provided by On My Own are personal services specifically designed to provide for the well-being of each regional center consumer to live safely in the community home of their choice.

113.     On My Own engaged in the services that were necessary to provide supported living services to Aleta onsite directly out of their offices.

114.     On My Own also performs the following functions at their offices which are directly necessary for them to sell their supported living services to the regional center: Administrative functions; rental or leasing of administrative office(s) space; purchasing office furniture, supplies, and equipment; arranging travel designated in the SLS vendor's contract as necessary for the performance of administrative functions; accounting; payroll; and background checks for paid staff, volunteers, and contractors as specified in the SLS vendor's contract.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

115.    On My Own selected a home for Aleta, and located and chose a roommate for her.  On My Own provided services to Areta with counseling, meetings with support staff, conducting a tour of the apartment that was chosen for Aleta, and introductions to the roommate and supervisor.  On My Own also proposed the names of personal attendants who were already working in the suggested home.

116.    On My Own set up a payment system for Aleta's account, billed the regional center for its administrative services and received payment.

117.    Plaintiffs received emails, documents and phone calls from the On My Own office regarding the services being provided.

118.    On My Own also facilitates access to SLS services and connects consumers directly to those services by hiring the providers, processing all forms, timesheets and daily activities reports, and by paying them directly, including the calculation of appropriate deductions and taxes.

119.    On My Own trains its own staff to provide services to consumers, and determines the days and times of shifts for the workers.

120.    SLS can only be provided to a regional center consumer by an approved regional center SLS vendor.

121.    On My Own is an approved regional center SLS vendor.

122.    On My Own violated the ADA by discriminating against Aleta by impermissibly denying her the participation in its services on the basis of her disability, which they determined made her unable to live in the community.

123.    On My Own violated the ADA by denying Aleta the equal benefit of its programs and services directly through its own actions of maintaining policies which allow discrimination against consumers who are referred to them.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

124.     On My Own violated the ADA by failing to provides services to Aleta in the most integrated setting possible. On My Own objected to Mother's request for Aleta to live in a neighborhood home, which was the most integrated community setting possible.

125.     On My Own used administrative methods that had the effect of discriminating by maintaining a policy that it was free to simply make its own determinations of the degree of a client's disability, and deny services based on that determination, despite a finding by the IPP team that Aleta was ready to live in the community.

126.     On My Own violated the ADA by engaging in discrimination against plaintiffs by the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations.  On My Own screened Aleta out by imposing its own criteria on her ability to live in the community and by screening out individuals with family members and caregivers who voice opinions on their services.

127.     On My Own violated the ADA by engaging in discrimination by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.  On My Own failed to modify its policies to allow Aleta to live in the most integrated setting possible, in a neighborhood home.  No attempts were made to modify any policies or practices to ensure that On My Own's services would be provided to Aleta in a non-discretionary manner.

128.     On My Own violated the ADA by retaliating against plaintiffs due to Mother's requests for services and supports.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

129.     Plaintiffs were foreseeably harmed emotionally and financially by On My Own's conduct.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### STEP

130.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

131.     This cause of action is brought by all plaintiffs against defendant STEP.

132.     Plaintiff Aleta Guthrey is a person with developmental disabilities.

133.     Areta Guthrey is also a person with disabilities by virtue of her arthritis and brain disorder.

134.     Both plaintiffs are entitled to the services and protections of Title III of the Americans with Disabilities Act to be provided in a non-discriminatory manner.

135.     STEP is a place of public accommodation and services.  All of the administrative work necessary to implement supported living service contracts occurs in the physical location of their offices.

136.     STEP is a service establishment where professionals provide services to their clients and a social service center where a staff provides social services to its consumers.

137.     STEP physically provided necessary services to plaintiffs onsite directly out of their offices.

138.     STEP is a provider of direct supported living services to consumers of the regional centers, including:

Assistance with selecting and moving into a home;
Choosing personal attendants and housemates;
Acquiring household furnishings;
Common daily living activities and emergencies;
Becoming a participating member in community life; and,
            Managing personal financial affairs, as well as other supports.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract

139.     STEP also performs the following functions at their offices which are directly necessary for them to sell their supported living services to the regional center: administrative functions; rental or leasing of administrative office(s) space; purchasing office furniture, supplies, and equipment; arranging travel designated in the SLS vendor's contract as necessary for the performance of administrative functions; accounting; payroll; and background checks for paid staff, volunteers, and contractors as specified in the SLS vendor's contract.

140.     STEP assigned a case worker for Aleta and executed the necessary agreements for the provision of supported living services, including what types of services would be provided to Aleta while living in her own home.

141.     STEP provided services to Areta with counseling, meetings with support staff, and introductions to the second case worker at the STEP offices.

142.     STEP was also working on recruiting, hiring, and training its own staff to provide services to plaintiffs.

143.     STEP set up a payment system for Aleta's account, billed the regional center for its administrative services and received payment.

144.     Plaintiffs received emails, documents and phone calls from the STEP office regarding the services being provided.

145.     STEP also facilitates access to SLS services and connects consumers directly to those services by hiring the providers, processing all forms, timesheets and daily activities reports, and by paying them directly, including the calculation of appropriate deductions and taxes.

146.     STEP trains its own staff to provide services to consumers, and determines the days and times of shifts for the workers.

147.     SLS can only be provided to a regional center consumer by an approved regional center SLS vendor.

148.     STEP is an approved regional center SLS vendor.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

149.     STEP violated the ADA by denying Aleta the equal benefit of its programs and services directly through its own actions of maintaining policies which allow discrimination against consumers who are referred to them.

150.     STEP violated the ADA by failing to provides services to Aleta in the most integrated setting possible. STEP objected to Mother's request for Aleta to live in a neighborhood home, which was the most integrated community setting possible.

151.     STEP violated the ADA by engaging in discrimination by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, such as supporting a fully integrated living situation and welcoming advocacy for their clients as required by law.

152.     No attempts were made to modify any policies or practices to ensure that STEP's services would be provided to Aleta in a non-discretionary manner.

153.     STEP violated the ADA by retaliating against plaintiffs due to Mother's requests for services and supports and voicing her opinions on issues of "philosophical" content as stated by STEP.

154.     STEP violated the ADA by denying Aleta the equal benefit of its programs and services directly through its own actions of maintaining policies which allow discrimination against consumers who are referred to them.

155.     STEP violated the ADA by engaging in discrimination by the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations.  STEP screened Aleta out by imposing its own criteria on her ability to live in the community and by screening out individuals with family

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

members and caregivers who voice opinions on their services, or do not comply with unexpressed "philosophies".

156.     Plaintiffs were foreseeably harmed emotionally and financially by STEP's conduct.

**FOURTH CLAIM FOR RELIEF-VIOLATION OF THE UNRUH ACT**
**ALTA CLAIFORNIA REGIONAL CENTER**

157.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

158.          This cause of action is brought by all plaintiffs against defendant Alta California Regional Center.

159.          Plaintiffs are both persons with disabilities as described above and are entitled to the protections of The Unruh Act, California Civil Code §51 et seq.

160.     The Unruh Act provides that a violation of the ADA will qualify as a violation of the Unruh Act.

161.     As outlined above, Alta has violated the ADA and, therefore, the Unruh Act.

162.     The Unruh Act also affords additional protections to all persons within the jurisdiction of this state who are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

163.     Alta is a registered California corporation and is therefore a business establishment within the meaning of the Unruh Act.

164.     Alta denied plaintiffs equal access to services and privileges by, inter alia, failing to oversee, administer, and enforce the contracts between Alta and On My Own, and between On My Own and plaintiffs in a non-discriminatory manner.

165.     Alta aided, incited or made a distinction that denied Aleta full access to equal accommodations, privileges, services, advantages, or facilities by

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract

maintaining an administrative policy of discriminating against persons with disabilities such as plaintiffs, and retaliation against those who advocate on behalf of the disabled, as mother did.

166.     Alta has also violated the Unruh Act by conspiring with the other defendants to harm plaintiffs.  In violation of its obligations to its consumers and the state of California, Alta aided and abetted unlawful retaliation by allowing On My Own and STEP to violate their contracts which require that they follow all applicable laws.

167.     Plaintiffs were foreseeably and substantially harmed by defendant's conduct, emotionally and financially.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF THE UNRUH ACT
## ON MY OWN

168.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

169.     This cause of action is brought by plaintiffs against defendant On My Own.

170.     Plaintiffs are both persons with disabilities as described above and are entitled to the protections of The Unruh Act, California Civil Code §51 et seq.

171.     Under state and federal laws, supported living services must be provided to all persons regardless of the type, nature or severity of disability.

172.     On My Own denied Aleta equal access, services, and privileges by impermissibly basing service decisions on the type and severity of Aleta's disability in violation of state and federal law.

173.     The Unruh Act provides that a violation of the ADA will qualify as a violation of the Unruh Act.

174.     As outlined above, On My Own has violated the ADA and, therefore, the Unruh Act.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

175.     The Unruh Act also affords additional protections to all persons within the jurisdiction of this state who are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

176.     On My Own is a registered California corporation and is therefore a business establishment within the meaning of the Unruh Act.

177.     On My Own denied plaintiffs' equal access to services and privileges by, inter alia, failing to fulfill the contracts between Alta and On My Own, and between On My Own and plaintiffs in a non-discriminatory manner.  Plaintiffs were singled out for disparate treatment due to disability and advocacy.

178.     On My Own denied Aleta full access to equal accommodations, privileges, services, advantages, or facilities by maintaining an administrative policy of discriminating against persons with disabilities such as plaintiffs, and retaliation against those who advocate on behalf of the disabled, as mother did.

179.     On My Own has also violated the Unruh Act by conspiring with Alta to harm plaintiffs.  In violation of its obligations to its consumers and the state of California, Alta and On My Own violated their contracts and fiduciary duties to provide services to the plaintiffs by acting in a discriminatory manner, consisting of singling Aleta out for different treatment due to her disabilities and mother's advocacy.

180.     Plaintiffs were substantially harmed by defendant's conduct, emotionally and financially.

181.     Defendant's conduct violated the Unruh Act because their actions were predicated on their perceptions of Aleta's disabilities and the impermissible belief that certain people were not entitled to supported living services.

182.     Plaintiffs were foreseeably substantially harmed by defendant's conduct, emotionally and financially.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF THE UNRUH ACT-STEP

183.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

184.     This cause of action is brought by plaintiffs against defendant STEP.

185.     Plaintiffs are both persons with disabilities as described above and are entitled to the protections of The Unruh Act, California Civil Code §51 et seq.

186.     Under state and federal laws, supported living services must be provided to all persons regardless of the type, nature or severity of disability.

187.     STEP denied Aleta equal access, services, and privileges by impermissibly basing service decisions on the type and severity of Aleta's disability and her mother's advocacy in violation of state and federal law.

188.     The Unruh Act provides that a violation of the ADA will qualify as a violation of the Unruh Act.

189.     As outlined above, STEP has violated the ADA and, therefore, the Unruh Act.

190.     The Unruh Act also affords additional protections to all persons within the jurisdiction of this state who are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

191.     STEP is a registered California corporation and is therefore a business establishment within the meaning of the Unruh Act.

192.     STEP denied plaintiffs equal access to services and privileges by, inter alia, failing to fulfill the contracts between Alta and STEP, and between STEP and plaintiffs in a non-discriminatory manner.  Plaintiffs were singled out for disparate treatment due to disability and advocacy.

193.     STEP denied Aleta full access to equal accommodations, privileges, services, advantages, or facilities by maintaining an administrative policy of

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

discriminating against persons with disabilities such as plaintiffs, and retaliation against those who advocate on behalf of the disabled, as mother did.

194.     STEP has also violated the Unruh Act by conspiring with Alta to harm plaintiffs.  In violation of its obligations to its consumers and the state of California, Alta and STEP violated their contracts and fiduciary duties to provide services to the plaintiffs by acting in a discriminatory manner, consisting of singling Aleta out for different treatment due to her disabilities and mother's advocacy.

195.     Plaintiffs were substantially harmed by defendant's conduct, emotionally and financially.

196.     STEP made a distinction that denied Aleta full access to equal accommodations, privileges, services advantages, or facilities by maintaining an administrative policy of discriminating against persons with certain disabilities and retaliation against those who advocate on behalf of the disabled.

197.     Defendant's conduct violated the Unruh Act because their actions were impermissibly predicated on their perceptions of Aleta's disabilities and the impermissible belief that certain people like Aleta were not entitled to supported living services.

198.     A substantial motivating reason for defendants' conduct was its perception that Aleta's disability made it impossible for her to live in the community. In the alternative, STEP's conduct was also a violation of the American with Disabilities Act.

199.     Plaintiffs were substantially harmed by defendant's conduct, emotionally and financially.

## TORTIOUS BREACH OF CONTRACT – FACTS COMMON TO ALL DEFENDANTS

200.     Aleta is a consumer of Alta California Regional Center.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

201.    Alta contracts with DDS to provide personal services to regional center consumers through authorized vendors.

202.    There is no free market or competitive marketplace for regional center services.  DDS will not pay for services unless they are contracted for and provided by an authorized vendor.

203.    Contract forms are provided by DDS and regional centers pursuant to statute and are not negotiated by the consumers.

204.    Aleta is severely developmentally disabled.  She cannot review contracts, supervise the work of vendors, or demand contract changes.

205.    Defendants were aware of the personal and emotional nature of the services to be provided as Areta had informed each of them many times that Aleta was in need of more services than were currently being provided.

206.    Defendants knew that Supported Living Services were a much higher level of care than Aleta received in her mother's home.

207.    Aleta needed more supervision, including night duty caregivers because she was not sleeping through the night.

208.    Defendants were aware that when Aleta was unsupervised, or not sleeping, she was tearing up papers, emptying drawers and clogging the toilets.

209.    Defendants were aware that Aleta was not sleeping well and that Areta was therefore also not sleeping and was exhausted.

210.    Defendants were aware that Aleta was not receiving the same level of service at her mother's home that she would receive in her own home with supported living services.

211.    Defendants knew that Aleta was receiving only 283 hours of supervision per month through IHSS and that Areta was her only caregiver.  They knew that Areta was exhausted and medically fragile and unable to keep up with the demands of Aleta's care, through meetings, phone calls and emails.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

212.     Alta knew that it did not provide genuine respite services for Areta because Alta did not contract with an agency that could provide caregivers for Aleta's gtube requirements.  Respite services were illusory since Areta would have to stand by at all times while supposedly being on respite.  Defendants knew that Alta's failure to provide respite to Areta was a factor in Areta's exhaustion and the need for supported living services.

213.     Defendants knew that supported living would provide 720 hours per month, 24 hours a day, supervision and personal attendant care for Aleta with a variety of caregivers in her own home, and that failing to provide SLS would result in severe emotional distress for the plaintiffs.

214.     Defendants knew that the mental and emotional well-being of the plaintiffs was a core reason for the contract.

215.     Contracts for supported living services are contracts for personal support services which are intended to further the fundamental policy of fostering nurturing relationships, full membership in the community, and realization of long-range personal goals for people with developmental disabilities.

216.     Supported Living Services contracts are contracts of adhesion which include a fiduciary responsibility to people with developmental disabilities and fulfill public policy purposes.

217.     Plaintiff Aleta Guthrey is a person with developmental disabilities and Areta Guthrey is her mother.  Both are entitled to the protections of the Americans with Disabilities Act.

**SEVENTH CLAIM FOR RELIEF**
**TORTIOUS BREACH OF CONTRACT, COVENANT OF GOOD FAITH**
**AND FAIR DEALNG-ALTA CALIFORNIA REGIONAL CENTER**

218.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

219.     This cause of action is brought by plaintiffs against defendant Alta.

220.     DDS and Alta entered into a contract for the benefit of plaintiffs to pay On My Own, through Alta, for supported living services for Aleta.

221.     Alta was given money by DDS to pay On My Own for services provided to plaintiffs.

222.     Alta paid On My Own and STEP for services delivered on Aleta's behalf.

223.     Alta unfairly interfered with plaintiffs' rights to receive the benefits of the DDS contact by failing to monitor On My Own and ensure compliance with the contracts entered into between the DDS and Alta, Alta and On My Own, and between On My Own and the plaintiffs in a non-discriminatory manner.

224.     Alta violated the Americans with Disabilities Act by failing to provide oversight in a non-discriminatory manner, by allowing its vendor to discriminate against plaintiffs and cause them harm by refusing to provide contracted for services.

225.     Alta had a special relationship with the plaintiffs under state and federal law to provide and oversee personal services for Aleta to live safely in her own home.

226.     Alta was aware that the plaintiffs were relying on them to assist plaintiffs in securing appropriate and necessary services for Aleta and her family.

227.     Alta's actions were reckless, intentional, and calculated to cause harm to the plaintiffs.

228.     Plaintiffs have done all that was required of them to do or were excused from having to do those things.

229.         Plaintiffs were harmed by the defendant's conduct.


**EIGHTH CLAIM FOR RELIEF**
**TORTIOUS BREACH OF CONTRACT COVENANT OF GOOD FAITH**
**AND FAIR DEALNG – ON MY OWN**

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

230. Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

231. This cause of action is brought by all plaintiffs against defendant On My Own.

232. Plaintiffs entered into a contract with On My Own which specified the terms of the services that On My Own would provide to the plaintiffs to support Aleta living in her own home. These services included assistance with finding a suitable home and hiring personal attendants for Aleta.

233. The contract between On My Own and the plaintiffs was a personal services contract entered into expressly for the benefit of the individual plaintiffs.

234. The contract contained an implied covenant of good faith and fair dealing which requires that neither party unfairly interfere with the right of any other party to receive the benefits of the contract.

235. DDS and Alta entered into a contract for the benefit of plaintiffs to pay On My Own, through Alta, for supported living services for Aleta.

236. Alta was given money by DDS to pay On My Own for services provided to plaintiffs.

237. Alta paid On My Own for services delivered on Aleta's behalf.

238. On My Own unfairly refused to perform the contract with plaintiffs and denied them their rights under the contract.

239. On My Own violated the Americans with Disabilities Act by failing to provide services in a non-discriminatory manner, by refusing to provide contracted for services on the basis of Aleta's condition.

240. On My Own had a special relationship with the plaintiffs under state and federal law to provide and oversee personal services for Aleta to live safely in her own home.

241. On My Own was aware that the plaintiffs were relying on them to assist plaintiffs in securing appropriate and necessary services for Aleta and her family.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

242.     On My Own's actions were reckless, intentional, and calculated to cause harm to the plaintiffs.

243.     Plaintiffs have done all that was required of them to do or were excused from having to do those things.

244.     Plaintiffs were foreseeably and substantially harmed by defendant's conduct, emotionally and financially.


**NINTH CLAIM FOR RELIEF**
**TORTIOUS BREACH OF CONTRACT, COVENANT OF GOOD FAITH**
**AND FAIR DEALNG –STEP**

245.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

246.     This cause of action is brought by plaintiffs against defendant STEP.

247.     Plaintiffs entered into a contract with STEP which specified the terms of the services that STEP would provide to the plaintiffs to support Aleta living in her own home.  These services included assistance with finding a suitable home and hiring personal attendants for Aleta.

248.     The contract between STEP and the plaintiffs was a personal services contract entered into expressly for the benefit of the individual plaintiffs.

249.     The contract contained an implied covenant of good faith and fair dealing which requires that neither party unfairly interfere with the right of any other party to receive the benefits of the contract.

250.     DDS and Alta entered into a contract for the benefit of plaintiffs to pay STEP, through Alta, for supported living services for Aleta.

251.     Alta was given money by DDS to pay STEP for services provided to plaintiffs.

252.     Alta paid STEP for services delivered on Aleta's behalf.

253.     STEP unfairly refused to perform the contract with plaintiffs and denied them their rights under the contract.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

254.     STEP violated the Americans with Disabilities Act by failing to provide services in a non-discriminatory manner, by refusing to provide contracted for services on the basis of Aleta's condition.

255.     STEP had a special relationship with the plaintiffs under state and federal law to provide and oversee personal services for Aleta to live safely in her own home.

256.     STEP was aware that the plaintiffs were relying on them to assist plaintiffs in securing appropriate and necessary services for Aleta and her family.

257.     STEP's actions were reckless, intentional, and calculated to cause harm to the plaintiffs.

258.     Plaintiffs have done all that was required of them to do or were excused from having to do those things.

259.     Plaintiffs were foreseeably and substantially harmed by defendant's conduct, emotionally and financially.

### TENTH CLAIM FOR RELIEF
### VIOLATION OF THE REHABILITATION ACT OF 1973
### ALTA CALIFORNIA REGIONAL CENTER

260.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

261.     This cause of action is brought by plaintiffs against ALTA.

262.     Plaintiff Aleta is an "otherwise qualified individual with a disability under section 504 of the Rehabilitation Act of 1973 in that she has mental and/or physical disabilities which substantially limit her ability to live independently without adequate supports and meets the essential eligibility requirements for long-term care under Medi-Cal and other state and local programs.

263.     Alta is a recipient of federal financial assistance, including federal Medicaid (Medi-Cal) funds and targeted case management funds under Title XIX of the Social Security Act.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

264.     By its actions detailed herein, defendant has denied Aleta access the array of community services she needs and have excluded her from participation in, denied her the benefits of, and otherwise subjected her to discrimination under programs and activities receiving federal financial assistance, in violation of section 504 and its implementing regulations.

265.     Failing to provide the community and Supported Living Services resulted in unnecessary isolation and risk of out of home placement of Aleta which constitutes discrimination under section 504.

266.     Defendant's policies and methods of administration discriminated against Aleta as set forth previously.  Defendant's policies and practices preclude the availability and provision of integrated, stable and equally available community living.

267.     Plaintiffs were foreseeably and substantially harmed by defendant's conduct, emotionally and financially.

### ELEVENTH CLAIM FOR RELIEF
### VIOLATION OF THE REHABILITATION ACT OF 1973
### ON MY OWN

268.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

269.     This cause of action brought by all plaintiffs against all defendant on My Own.

270.     Plaintiff Aleta is an "otherwise qualified individual with a disability under section 504 of the Rehabilitation Act of 1973, in that she has mental and/or physical disabilities which substantially limit her ability to live independently without adequate supports and meets the essential eligibility requirements for long-term care under Medi-Cal and other state and local programs.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract

271.     Defendant is a recipient of federal financial assistance within the meaning of 29 U.S.C. Section 794(b), including federal Medicaid (Medi-Cal) funds and targeted case management funds under Title XIX of the Social Security Act.

272.     By the actions detailed herein, defendant has denied Aleta access to the array of community services she needs and have excluded her from participation in, denied her the benefits of, or and otherwise subjected her to discrimination under programs and activities receiving federal financial assistance, in violation of section 504 and its implementing regulations.

273.     Failing to provide the community and Supported Living Services resulted in unnecessary isolation and risk of out of home placement of Aleta which constitutes discrimination under section 504.

274.     Defendant's policies and methods of administration discriminate against people with disabilities as set forth previously.  Defendant's policies and practices precluded the availability of provision of integrated, stable and equally available community living for Aleta.

275.     Plaintiffs were foreseeably and substantially harmed by defendant's conduct, emotionally and financially.

**TWELFTH CLAIM FOR RELIEF**
**VIOLATION OF THE REHABILITATION ACT OF 1973**
**STEP**

276.     Plaintiffs reallege and incorporate every allegation and paragraph set forth above.

277.     This cause of action is brought by all plaintiffs against defendant STEP.

278.     Plaintiff Aleta is an "otherwise qualified individual with a disability under section 504 of the Rehabilitation Act of 1973, in that she has mental and/or physical disabilities which substantially limit her ability to live independently without adequate supports and meets the essential eligibility requirements for long-term care under Medi-Cal and other state and local programs.

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract

279.     Defendant is a recipient of federal financial assistance within the meaning of 29 U.S.C. Section 794(b), including federal Medicaid (Medi-Cal) funds and targeted case management funds under Title XIX of the Social Security Act.

280.     By the actions detailed herein, defendant has denied Aleta access to the array of community services she needs and have excluded her from participation in, denied her the benefits of, or and otherwise subjected her to discrimination under programs and activities receiving federal financial assistance, in violation of section 504 and its implementing regulations.

281.     Failing to provide the community and Supported Living Services resulted in unnecessary isolation and risk of out of home placement of Aleta which constitutes discrimination under section 504.

282.     Defendant's policies and methods of administration discriminate against people with disabilities as set forth previously.  Defendant's policies and practices precluded the availability of provision of integrated, stable and equally available community living for Aleta.

283.     Plaintiffs were foreseeably and substantially harmed by defendant's conduct, emotionally and financially.

**RELIEF REQUESTED**

284.     WHEREFORE, plaintiffs respectfully request this Court to grant the following relief:

285.     Assume jurisdiction over this action and maintain continuing jurisdiction until defendants are in full compliance with every order of this Court.

286.     Award general and special damages according to proof;

287.     Award punitive damages for willful conduct;

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the Rehabilitation Act of 1973, Breach of Contract

288.     Award plaintiffs their costs, disbursements and reasonable attorney's fees

pursuant to law including, but not limited, to California Government Code section

1021.5, 29 U.S.C. Section 794r(a) and 42 U.S.C. Sections 1988 and 12205.

289.     Grant such other and further relief as the Court deems just and proper.


        Under Federal Rule of Civil Procedure 11, by signing below, I certify to the

best of my knowledge, information, and belief that this complaint: (1) is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or

needlessly increase the cost of litigation; (2) is supported by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual

contentions have evidentiary support or, if specifically so identified, will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery;

and (4) the complaint otherwise complies with the requirements of Rule 11.



Date of signing:        December 13, 2021


Signature of Attorney                    /s/ Areta Guthrey
Printed Name of Attorney                 Areta Guthrey
Bar Number                               122245
Name of Law Firm                         Areta Guthrey
Street Address                           7207 Yarrow Way, Citrus Heights
State and Zip Code                       Ca 95610
Telephone Number                         707-363-4482
            E-mail                        akguthrey@yahoo.com

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract

**Re: Guthrey, et al v. Alta California Regional Center, et al**
**Case No.  2:18-cv-01087-MCE-EFB**

### PROOF OF SERVICE

I, the undersigned, hereby certify that I am a citizen of the United States, over the

age of eighteen years and not a party to this action.  On the date below, I served a copy

of **Plaintiffs' Second Amended Complaint** by placing a copy in a postage paid

envelope addressed to the persons hereinafter listed and by depositing said envelope in

the United States Mail addressed to:

Heather-Ann Young                       David Daniels

Gordon & Rees                          EMK Lawyers

3 Park Center Drive, Suite 200         2990 Lava Ridge Ct #205

Sacramento, California 95825           Roseville, CA  95661


Jennifer Randlett Madden               Anthony Demaria

Delfino Madden O'Malley Coyle          1690 W. Shaw Ave, Ste. 220

& Koewler                              Fresno, CA  93711

500 Capitol Mall, Suite 1550

Sacramento CA  95814


I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 13, 2021 at Sacramento, California.


_____

Eric Guthrey

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second Amended Complaint for Violations of the Americans with Disabilities Act, The Unruh Act, the
Rehabilitation Act of 1973, Breach of Contract