UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA GUTHREY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA CALIFORNIA REGIONAL CENTER, et al.,<br><br>Defendants. | No. 2:18-cv-01087-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiffs Aleta Guthrey ("Aleta"), a conserved adult, through her Conservator, Areta Guthrey ("Areta"), and Areta, as an individual, (collectively, "Plaintiffs")[1] seek damages on grounds that Aleta was wrongfully denied access to support services to which she was entitled due to her multiple disabilities. Areta, who in addition to serving as Aleta's conservator is also her mother, further claims that both she and Aleta were discriminated and retaliated against when Areta asserted their right to such services. Defendants are three different entities alleged to be responsible for the provision of services to Aleta.

///

---

[1] Given their shared surnames, the Court will utilize Plaintiffs' first names when referring to them individually.

1

Presently before the Court are three separate motions to dismiss Plaintiffs' Second Amended Complaint, ECF No. 69 ("SAC"), brought pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] on behalf of (1) Defendant S.T.E.P., Inc. ("STEP"),[3] ECF No. 70; (2) Defendant Alta California Regional Center ("Alta"), ECF No. 72; and (3) Defendant On My Own Independent Living Services, Inc. ("On My Own"), ECF No. 83.  Following this Court's authorization in light of Plaintiffs' retention of counsel, Plaintiffs filed a Sur-Reply to the pending Motions to Dismiss, to which each Defendant has filed a response.  See ECF Nos. 97–101.  For the reasons set forth below, Defendants' Motions are GRANTED.[4]

## BACKGROUND[5]

Aleta is a young woman with developmental disabilities as a result of microcephaly, a physical and intellectual impairment that substantially limits all of her major life activities.  She does not speak, write, or eat by mouth, and she takes nutrition by way of a gastrostomy tube.  According to the SAC, Aleta qualifies as an individual with a disability under all applicable state and federal laws.  Areta is a single mother of three children with developmental disabilities.  She has served as Aleta's conservator since she turned 18, and until May 1, 2020, cared for Aleta on a full-time basis.  Because she suffers from both arthritis and bipolar disorder, Areta claims that caring for her family is difficult.

Aleta was referred to California's regional care system at the time of her birth in 1995.  That system is governed by the Lanterman Developmental Disabilities Services

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

[3] This acronym is a shortened version of "Strategies to Empower People."

[4] Because oral argument would not have been of material assistance, the Court ordered these matters submitted on the briefs.  E.D. Local Rule 230(g).

[5] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' SAC.

2

Act, California Welfare and Institutions Code §§ 4501 et seq. ("Lanterman Act" or "Act"). The Act states that services should be provided to prevent or minimize the institutionalization of developmentally disabled persons like Aleta and to enable them to lead more independent and productive lives in the community.  Provision of services under the Lanterman Act is progressively delegated first from the California Health and Human Services Agency to the California Department of Developmental Services ("DDS"), and then from DDS to regional care centers which, in turn, contract with the vendors who provide direct services to those qualifying for care.

In 2014, after moving to Citrus Heights, California, Aleta became a client of Alta and Areta began discussing with Aleta's assigned service coordinator at Alta the provision of Supported Living Services ("SLS") for Aleta in her own home.  Although Alta had at times indicated that Aleta's feeding tube made independent living problematic, even with personal attendant care, Areta was eventually introduced by Alta, in 2016, to On My Own.  Areta claims she signed numerous documents, including a contract, so that On My Own could provide SLS such as locating a home and hiring personal caregivers for Aleta under Alta's auspices.

In April 2017, Areta was allegedly informed by On My Own representative Mary McGlade that she had located a roommate for Aleta.  Although Areta approved the apartment in question, another resident refused to vacate the apartment and a different apartment had to be found for Aleta and her proposed roommate.  Areta claims that this process was delayed by Alta's desire to have a third young woman share the living arrangement.  Then, a meeting was scheduled between the other two prospective roommates from which both Areta and Aleta were allegedly excluded.  Once Areta expressed disappointment about being left out of the meeting, she claims she was informed in writing, on May 1, 2017, that On My Own was terminating services for Aleta. Areta believes that this was in retaliation for her advocacy on Aleta's behalf, and when she spoke to Aleta's service coordinator at Alta about what transpired, she claims to

///

have been told, in writing, that vendors like On My Own had an absolute right to discriminate and determine whether they wished to provide services.

In the summer of 2017, Aleta received another SLS referral through Alta, this time for STEP. Areta again claims she entered into a contract with STEP to provide SLS for Aleta, such as locating a suitable home and hiring caregivers. When Aleta's case manager at STEP was hired away by Alta a few weeks later, Aleta's file had to be reassigned, moving Aleta farther down the line in housing placement given the new manager's existing caseload. This resulted in a delay in Aleta being considered for SLS until after Christmas 2017.

Areta contacted Jacquie Dillard-Foss, STEP's chief executive officer, to see if placement could be expedited on grounds that she and Aleta were in crisis and that the situation was not safe. Specifically, Areta explained that both she and Aleta were not sleeping, that Aleta was in danger when she was not supervised, that Aleta was not receiving adequate supervision, and that Alta would not increase her hours as long as Aleta lived at home. When Areta requested a status update in November 2017 as to when SLS would be provided, however, she was told by Alta's service coordinator that STEP was refusing to provide services. Areta states that the email sent by Tammy Smith, STEP's SLS Program Manager, to Alta indicated that STEP's decision turning down the referral was based both on Areta's advocacy as well as Aleta's care needs.

The SAC further alleges that shortly before STEP rejected Aleta's placement, Alta scheduled a meeting for current SLS providers. Areta claims that she attempted to sign up for the meeting, but Alta refused her, stating that the meeting was for current vendors only. However, Areta alleges that either Tammy Smith or Jacquie Dillard-Foss attended the meeting with representatives of On My Own, who intentionally influenced STEP's decision to reject Aleta.

In the beginning of 2020, Areta attended a vendor orientation course at Alta in order to become a SLS vendor. Shortly after the orientation, a vendor suddenly appeared, and a plan was put into place and quickly executed. On May 1, 2020, Aleta

finally moved into her own home in the community with the assistance of two caregivers, increased supervision, and elevated services.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &

1  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to
2  relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their
3  claims across the line from conceivable to plausible, their complaint must be dismissed."
4  Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that
5  actual proof of those facts is improbable, and 'that a recovery is very remote and
6  unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

7       A court granting a motion to dismiss a complaint must then decide whether to
8  grant leave to amend.  Leave to amend should be "freely given" where there is no
9  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
10 to the opposing party by virtue of allowance of the amendment, [or] futility of [the]
11 amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
12 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
13 be considered when deciding whether to grant leave to amend).  Not all of these factors
14 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
15 carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
16 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
17 "the complaint could not be saved by any amendment."  Intri-Plex Techs., Inc. v. Crest
18 Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d
19 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160
20 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .
21 constitutes an exercise in futility . . . .")).
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

# ANALYSIS

## A.  Claims One through Three:  Violations of Title III of the Americans with Disabilities Act ("ADA")[6]

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  At issue here is whether Alta, On My Own, and STEP each qualify as places of public accommodations.

The Ninth Circuit has defined places of public accommodation as "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services."  Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000).  There must accordingly be "some connection between the good or service complained of and an actual physical place . . ."  Id.

In their SAC, Plaintiffs allege that, from its offices, Alta provides vendor registration and orientation meetings for potential vendors, and its service coordinators provide case management services such as making phone calls, preparing contracts, and sending emails to vendors and service providers "to create a supported living arrangement for Aleta."  SAC ¶¶ 88, 98.  Plaintiffs further allege that "Alta representatives held meetings at Alta's offices at which Aleta's needs and desires were assessed and discussed and the necessary forms were completed to outline the terms of the services that would be provided by Alta and the vendors for Aleta's supported living."  Id. ¶ 89.  As for STEP and On My Own, Plaintiffs allege that each "performs the following functions at their offices":  "administrative functions; rental or leasing of

---

[6] In their Sur-Reply, Plaintiffs allege for the first time that Defendants are instrumentalities of the state and thus subject to Title II of the ADA, although it is unclear whether Plaintiffs are asserting such a claim against all Defendants or Alta only.  See Pls.' Sur-Reply, ECF No. 98, at 4–5.  In any event, Plaintiffs have only asserted claims based on Title III of the ADA, and there is no mention of Title II in the SAC.  See SAC ¶¶ 30, 82, 110, 134.  Given this and that Plaintiffs have never sought leave to add a Title II claim, the Court will not consider such a claim or any derivative arguments now.

administrative office(s) space; purchasing office furniture, supplies, and equipment; arranging travel designated in the SLS vendor's contract as necessary for the performance of administrative functions; accounting; payroll; and background checks for paid staff, volunteers, and contractors as specified in the SLS vendor's contract." Id. ¶¶ 114, 139.  Lastly, Plaintiffs allege that On My Own and STEP "received emails, documents and phone calls from [their] office[s] regarding the services being provided." Id. ¶¶ 117, 144.

While such allegations are more detailed than those set forth in previous Complaints, the SAC still fails to show a nexus between the disability support services provided by Defendants and their physical office locations.  See Mem. and Order, ECF No. 68, at 11–14.  These allegations only demonstrate that administrative tasks were performed at Defendants' offices, not disability support services such as providing care or increased supervision.  In other words, there are no allegations that Defendants provided SLS or disability support services directly from their physical office locations. Plaintiffs' Title III ADA claims thus fail as currently constituted.

As for leave to amend, this is Plaintiffs' third iteration of the Complaint and despite being given multiple opportunities by the Court, Plaintiffs have failed to adequately allege a viable ADA claim against Defendants.  Accordingly, Claims One through Three are DISMISSED without leave to amend.

**B.  Claims Four through Six:  Violations of California's Unruh Civil Rights Act ("Unruh Act")**

California's Unruh Act permits individuals injured by an ADA violation to recover damages through a private lawsuit.  Munson v. Del Taco, Inc., 46 Cal. 4th 661, 673 (2009).  Because Plaintiffs have not identified any viable ADA violation for the reasons stated above, their Unruh Act claims also fail.  Claims Four through Six are therefore DISMISSED without leave to amend.

///

///

**C.     Claims Seven through Nine:  Tortious Breach of Contract, Covenant of Good Faith and Fair Dealing**

Although an implied covenant of good faith and fair dealing may be implied by law into every contract, and while a breach of that covenant can potentially give rise to tort liability in a contractual setting, case law sharply limits the kinds of contracts that can support an additional claim sounding in tort.  Generally, "[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law."  Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 94–95 (1995) (citing Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 515 (1994)) (alteration in original).  The California Supreme Court concluded that tort recovery is precluded other than in the context of insurance coverage, "at least in the absence of violation of 'an independent duty arising from principles of tort law' other than the bad faith denial of the existence of, or liability under, the breached contract."  Freeman & Mills, 11 Cal. 4th at 102 (citing Applied Equipment, 7 Cal. 4th at 515).

Plaintiffs allege that "Defendants were aware of the personal and emotional nature of the services to be provided as Areta had informed each of them many times that Aleta was in need of more services than were currently being provided," and that "Defendants knew that the mental and emotional well-being of the plaintiffs was a core reason for the contract."  SAC ¶¶ 205, 214.  Even construing these allegations in a light most favorable to Plaintiffs, this case still does not fall within the very narrow range of cases where emotional distress would be expected in the event of a breach of contract.  As this Court previously explained,

> [t]here is no authority for the proposition that delay in providing a different level of care to a profoundly disabled individual like Aleta, where her basic care needs continued to be met in the interim and where additional services were ultimately provided, falls within the limited exception permitting tort liability . . . Nor is there support for the even more attenuated argument that the provision of such services to Aleta expressly implicated Areta's mental and emotional well-being so as to permit tort damages to Areta directly.

Mem. and Order, ECF No. 68, at 16.  Claims Seven through Nine are thus DISMISSED without leave to amend in light of Plaintiffs' repeated failures to sustain such a claim.

### D. Claims Ten through Twelve: Violations of the Rehabilitation Act of 1973 ("Rehabilitation Act")

Under § 504 of the Rehabilitation Act, a plaintiff must show (1) he or she is an "individual with a disability" (2) "otherwise qualified" to receive the benefit (3) but denied the benefits of the program solely by reason of his disability, (4) provided that the program receives federal financial assistance.  See 29 U.S.C. § 794; Weinrich v. L.A. Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997); Bonner v. Lewis, 857 F.2d 559, 562–63 (9th Cir. 1988).  The first three prerequisites mirror the requirements for establishing a violation of Title III of the ADA, which similarly requires that a disabled individual be denied the benefits of a public accommodation because of his or her disability.  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).

In order to demonstrate an additional claim under the Rehabilitation Act, a plaintiff must first establish an ADA claim before going on to show that the program in question receives federal financial assistance.  Weinrich, 114 F.3d at 978.  Once again, Plaintiffs fail to state an ADA claim against Defendants which means that Plaintiffs have also not satisfied the prerequisites for a viable Rehabilitation Act claim.  Accordingly, Claims Ten through Twelve are DISMISSED without leave to amend.[7]

///
///
///
///
///
///

---

[7] Because dismissal of Plaintiffs' claims is warranted under Rule 12(b)(6), the Court need not consider Alta's alternative motion for a definite statement, see ECF No. 72, at 10–11, or STEP's argument that Plaintiffs lack standing to sue it, see ECF No. 70-1, at 9–11.  Furthermore, because the Court need not consider documents outside the pleadings in reaching its decision, STEP's Request for Judicial Notice, ECF No. 70-2, is DENIED as moot.

**CONCLUSION**

For the foregoing reasons, Defendants STEP, Alta, and On My Own's Motions to Dismiss (ECF Nos. 70, 72, 83) are each GRANTED without leave to amend. The Clerk of Court is directed to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

Dated: February 1, 2023

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE