UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA GUTHREY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA CALIFORNIA REGIONAL CENTER, et al.,<br><br>Defendants. | No. 2:18-cv-01087-DC-JDP<br><br>ORDER GRANTING DEFENDANT ON MY OWN INDEPENDENT LIVING SERVICES, INC.'S MOTION TO DISMISS<br><br>(Doc. No. 136) |

This matter is before the court on the motion to dismiss filed by Defendant On My Own Independent Living Services, Inc. ("OMO") on February 4, 2025. (Doc. No. 136.) Pursuant to Local Rule 230(g), the court declines to set the motion for a hearing and will instead decide Defendant OMO's motion on the papers. (*See* Doc. No. 131.) For the reasons explained below, the court will grant Defendant OMO's motion to dismiss.

## BACKGROUND

### A.    Factual Background

In this disability discrimination action, Plaintiffs Aleta Guthrey, a conserved adult through her conservator Areta Guthrey, and Areta Guthrey allege the following in their operative second amended complaint.[1] (Doc. No. 69.)

---

[1] Areta Guthrey is the mother of Aleta Guthrey. To avoid confusion, the court will refer to the Plaintiffs using their first names, Areta and Aleta.

1

Plaintiff Aleta is a young woman with developmental disabilities due to microcephaly, a physical and intellectual impairment that substantially limits all her major life activities. (*Id.* at ¶¶ 3, 37.) She does not speak, write, or eat by mouth, and she takes nutrition by way of a gastrostomy tube. (*Id.* at ¶ 3.) Plaintiff Aleta allegedly qualifies as an individual with a disability under all applicable state and federal laws. (*Id.*)

Plaintiff Areta is a single mother of three children, including Plaintiff Aleta, who have developmental disabilities. (*Id.* at ¶¶ 4, 38.) She has served as Plaintiff Aleta's conservator since Plaintiff Aleta turned eighteen years old, and until May 1, 2020, she cared for Plaintiff Aleta on a full-time basis. (*Id.* at ¶ 4.) Because she suffers from both arthritis and bipolar disorder, Plaintiff Areta tires easily and is unable to keep pace with Plaintiff Aleta's needs, which is also physically exhausting. (*Id.* at ¶¶ 39–41.)

Plaintiffs live in Sacramento County, California. (*Id.* at ¶ 4.)

In California, a comprehensive statutory scheme created by the Lanterman Developmental Disabilities Act set up a system of twenty-one regional centers to provide services and support to individuals with developmental disabilities and minimize the institutionalization and dislocation of those individuals from their communities. (*Id.* at ¶¶ 14–15.) Pursuant to that scheme, the California Department of Developmental Services ("DDS") contracts with the regional centers, which provide direct services to consumers and their families and caregivers, including case management and assistance in securing services and supports for consumers. (*Id.* at ¶¶ 16, 24.) The regional centers also contract with DDS-approved vendors for the provision of supported living services ("SLS"). (*Id.* at ¶¶ 17–20, 22.) Those SLS vendors provide confidential, private, and specialized direct services to consumers by recruiting, hiring, training, and paying the caregivers who are essential to the consumer's safety and well-being. (*Id.* at ¶ 21.) They also help consumers choose a home, prepare meals, and assist with financial matters. (*Id.*)

Due to Plaintiff Aleta's developmental disabilities, she was referred to the regional center system in 1995 before leaving the hospital after her birth. (*Id.* at ¶ 37.)

In 2014, Plaintiff Aleta's family moved to Citrus Heights, California. (*Id.* at ¶ 43.) At that time, Plaintiff Aleta became a client of the Defendant Alta California Regional Center ("Alta"),

2

1  and Plaintiff Areta began discussions with the Alta service coordinator to provide SLS for Aleta

2  in her own home. (*Id.* at ¶ 43.) According to Plaintiffs, living with her mother made Plaintiff

3  Aleta ineligible for SLS, so Plaintiffs discussed with Alta their request to secure other housing for

4  Plaintiff Aleta and thus be eligible for SLS in her own home. (*Id.* at ¶ 44.) Plaintiffs also allege

5  that "people with feeding tubes are not eligible for certain types of respite or personal attendant

6  care," and Plaintiff "Aleta has been at risk of institutionalization due to her gastrostomy tube."

7  (*Id.*)

8         In 2016, at the Alta offices, Plaintiff Areta was introduced to Mary McGlade,[2] a

9  representative of Defendant OMO. (*Id.* at ¶ 46.) Defendant OMO is a private, for-profit

10  corporation that is a DDS-approved vendor of regional center services. (*Id.* at ¶¶ 10–11.)

11         Plaintiff Areta signed numerous documents, including a contract for Defendant OMO to

12  provide supported living services, such as locating a home and hiring personal caregivers for

13  Plaintiff Aleta, through Alta. (*Id.* at ¶ 47.)

14         In April 2017, McGlade told Plaintiff Areta that a roommate had been found for Plaintiff

15  Aleta, and McGlade arranged for that roommate and Plaintiff Aleta to meet and for Plaintiff Areta

16  to tour and approve the apartment, which she did. (*Id.* at ¶ 48.) Plaintiff Aleta then began

17  preparing to move Plaintiff Areta into her own apartment with a roommate, both of whom would

18  be supported by Defendant OMO. (*Id.* at ¶ 49.) A few days later, McGlade told Plaintiff Aleta

19  that the old roommate (whose room Plaintiff Areta would be taking) was refusing to leave the

20  apartment, so McGlade suggested Plaintiff Aleta and the other roommate find a new place and

21  move in together. (*Id.* at ¶ 50.) Plaintiff Areta searched for housing and sent several suggestions

22  to Defendant OMO, but that correspondence went unanswered. (*Id.*) Defendant Alta's service

23  coordinator told Plaintiff Areta that she wanted to include a third young woman in the housing

24  arrangement, which delayed the process. (*Id.* at ¶ 51) Suddenly, at the end of April 2017,

25  McGlade told Plaintiff Areta that Defendant OMO "was pushing everything back by two weeks

26

27  ───────────────────
   [2]  Plaintiffs named Mary McGlade as a defendant in this action, but the court dismissed Plaintiffs'
   claims brought against her, and she was terminated from this action on November 23, 2021. (Doc.

28  No. 68.)

1   to accommodate a woman who had just come into the process." (*Id.* at ¶ 53.) Defendant OMO

2   then scheduled a meeting between the other two prospective roommates and excluded Plaintiffs

3   from this meeting. (*Id.*) On April 30, 2017, Plaintiff Areta expressed her disappointment for

4   having been left out of that meeting and for receiving no response to her texts and emails

5   recommending potential housing. (*Id.* at ¶ 54.) On May 1, 2017, McGlade allegedly notified

6   Plaintiff Areta "[i]n an immediate and terse note," that OMO "was terminating services for Aleta

7   in retaliation for [Areta's] advocacy on Aleta's behalf." (*Id.* at ¶ 45.)

8       According to Plaintiffs, no one at OMO, including McGlade, had expressed any difficulty

9   or issues with Plaintiff Areta. (*Id.* at ¶ 56.) When Plaintiff Areta contacted Alta, the Alta service

10  coordinator told her in writing that the vendors have an absolute right to discriminate and

11  determine who their clients will be. (*Id.* at ¶ 57.)

12      In their SAC, Plaintiffs allege a similar experience with another SLS vendor, Defendant

13  S.T.E.P., Inc. ("STEP"), in the summer and fall of 2017, which culminated in Plaintiff Areta

14  being informed by the Alta service coordinator that Defendant STEP was refusing to provide

15  services for Plaintiff Aleta because of Plaintiff Areta's "advocacy and 'philosophy'" and Plaintiff

16  Aleta's care needs.[3] (*Id.* at ¶¶ 58–70.) Ultimately, Defendant Alta and another SLS vendor

17  secured housing for Plaintiff Aleta, and on May 1, 2020, she moved into her own home in the

18  community with two caregivers. (Doc. No. 69 at ¶¶ 74–75.)

19  **B.    Procedural Background**

20      On May 1, 2018, Plaintiffs filed the complaint initiating this disability discrimination

21  action. (Doc. No. 1.) On June 15, 2020, the court granted Defendants' motions to dismiss that

22  complaint, with leave to amend, because the complaint was poorly organized with no numbered

23  paragraphs and did not specify which claims were brought against which defendant. (Doc. No.

24  46.) On July 5, 2020, Plaintiffs filed the first amended complaint. (Doc. No. 47.) On November

25  23, 2021, the court granted Defendants' motions to dismiss the first amended complaint (with

26

27  _____

[3]  Because the pending motion is brought only by Defendant OMO, the court does not recount the
details of Plaintiffs' allegations regarding their experience with Defendant STEP and their
28  subsequent experiences with Defendant Alta in the factual background section of this order.

4

leave to amend only as to certain claims and defendants, and without leave to amend as to others)

because Plaintiffs' allegations failed to sufficiently state cognizable claims. (Doc. No. 68.)

On December 13, 2021, Plaintiffs filed the operative SAC against Defendants Alta, OMO, and STEP. (Doc. No. 69.) Therein, Plaintiffs bring disability discrimination claims under Title III of the Americans with Disabilities Act ("ADA"), California's Unruh Act, and Section 504 of the Rehabilitation Act, as well as claims for tortious breach of contract. (*Id.*)

On February 1, 2023, the court granted Defendants' motions to dismiss all claims brought in the SAC without further leave to amend because "this is Plaintiffs' third iteration of the complaint and despite being given multiple opportunities by the court, Plaintiffs have failed to adequately allege a viable [] claim against Defendants." (Doc. No. 102 at 8.) In that February 1, 2023 order, the court directed that this case be closed, and judgment was entered on that same day. (Doc. Nos. 102, 103.)

On March 1, 2023, Plaintiffs filed separate motions for reconsideration, which the court denied in an order signed on June 28, 2023. (Doc. No. 119.)

On July 28, 2023, Plaintiffs filed a notice of appeal of the court's February 1, 2023 order dismissing their claims and the June 28, 2023 order denying reconsideration of that order. (Doc. No. 120.) On appeal, Plaintiffs challenged only the dismissal of their claims brought under ADA Title III and Section 504 of the Rehabilitation Act; Plaintiffs did not challenge the court's dismissal of their Unruh Act and tortious breach of contract claims. (*See* Doc. No. 129 at 3.)

On August 30, 2024, the Ninth Circuit issued a memorandum decision affirming in part, reversing in part, and remanding the action back to this court for further proceedings. (Doc. No. 123.) The Ninth Circuit's mandate issued on September 23, 2024. (Doc. No. 124.)

As for the ADA Title III claims, the Ninth Circuit panel found that this court did not err in dismissing Plaintiffs' ADA Title III claim brought against Defendant OMO because Plaintiffs did not sufficiently allege that Defendant OMO owns or operates a place of public accommodation, as is required for ADA Title III claim. (*Id.* at 3–4.) But the Ninth Circuit panel found that the district court erred in dismissing Plaintiffs' ADA Title III claim brought against Defendants Alta and STEP, because Plaintiffs had sufficiently alleged the requisite nexus to a physical place of

accommodation for those Defendants. (*Id.* at 4–5.) The panel declined to reach Defendants Alta and STEP's additional argument that the ADA Title III claims fail due to Plaintiffs having not sufficiently alleged any discriminatory conduct because those arguments were not considered by the district court, and thus would be for the district court to consider in the first instance on remand. (*Id.* at 5–6.)

As for the Rehabilitation Act claims, the Ninth Circuit panel found that "[t]he district court erred in holding that Plaintiffs failed to state a claim under Section 504 of the Rehabilitation Act because Defendants are not places of public accommodation under Title III of the ADA." (*Id.* at 6.) The panel explained that "[u]nder Section 504, there is no requirement that the defendant own or operate a place of public accommodation, as is required under ADA Title III," and "[t]he cases cited by Defendants and the district court equating the substantive standard of liability under Section 504 and the ADA were discussing Title II of the ADA, not Title III." (*Id.* at 6–7.) Thus, the panel "remand[ed] for the district court to consider Defendants' alternate challenges to Plaintiffs' Section 504 claim in the first instance." (*Id.* at 7.)

Lastly, the Ninth Circuit panel concluded that the district court properly denied Plaintiffs' motions for reconsideration and did not abuse its discretion in denying Plaintiffs leave to file a third amended complaint given that "Plaintiffs were afforded multiple opportunities to amend their complaint to correct any deficiencies." (*Id.* at 7–8.) In support of that conclusion, the panel emphasized that "Plaintiff Areta Guthrey, who drafted each iteration of the complaint before substitution of counsel, is an attorney licensed to practice both in the State of California and before the district court (Eastern District of California)," and "after the substitution of counsel, new counsel was allowed to file a sur-reply to Defendants' motions to dismiss." (*Id.* at 8–9.)

On October 30, 2024, this court scheduled a status conference and directed the parties to file a joint status report regarding how this case should proceed on remand.[4] (Doc. No. 126.) Defendants filed a status report setting forth their position and Defendant Aleta's position, as expressed by her counsel of record, and noting that Defendant Areta did not respond or otherwise

---

[4] This action was reassigned to the undersigned district judge on October 30, 2024. (Doc. No. 125.)

1   participate in the preparation of that status report. (Doc. No. 129.) At the status conference held

2   on December 6, 2024, counsel for Defendants appeared but no appearance was made for either

3   Plaintiff Areta or Plaintiff Aleta.[5] (Doc. No. 132.) The court nonetheless heard from Defendants

4   on how they wished to proceed and set a briefing schedule for Defendant OMO to file a renewed

5   motion to dismiss the sole claim remaining against it in this action. (*Id.*) Defendants Alta and

6   STEP, on the other hand, expressed optimism that they may be able to reach a settlement with

7   Plaintiffs via a private mediation and avoid the need to file renewed motions to dismiss the claims

8   brought against them. (*Id.*) Thus, the court also set a deadline for the parties to file a joint status

9   report regarding the status of those mediation efforts. (*Id.*)

10         On February 4, 2025, Defendant OMO filed the pending motion to dismiss Plaintiffs'

11   remaining claims brought against it, alleging disability discrimination under Section 504 of the

12   Rehabilitation Act. (Doc. No. 136.) On February 18, 2025, Plaintiff Aleta filed an opposition

13   thereto. (Doc. No. 137.) Several hours later that same day, Plaintiff Areta filed a copy of the filed

14   version of Plaintiff Aleta's opposition as her own opposition brief, albeit with a modification to

15   the document title and the attorney information on the caption page to list her contact information

16   rather than the information of Plaintiff Aleta's counsel. (Doc. No. 138.) On February 28, 2025,

17   Defendant OMO filed a reply in support of the pending motion. (Doc. No. 139.)

18                                    **LEGAL STANDARD**

19         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to

20   dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted.

21   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a

22   cognizable legal theory or the absence of sufficient facts to support a cognizable legal

23   theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v.*

24   *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

25         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

26   _____

27   [5]   On December 9, 2024, the court issued an order to Plaintiffs to show cause why this case
     should not be dismissed due to their failure to prosecute and failure to comply with a court order.
     (Doc. No. 132.) Plaintiffs each filed a response, and the court discharged the order to show cause
28   on December 17, 2024. (Doc. No. 135.)

1    accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

2    U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

3    *also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim

4    showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if

5    it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is

6    liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For

7    purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed

8    in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

9    337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted

10   unless the district court 'determines that the pleading could not possibly be cured by the

11   allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009)

12   (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

13                                                    **ANALYSIS**

14           The Rehabilitation Act "prohibits a program receiving federal financial assistance from

15   discriminating based on disability." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 650

16   (9th Cir. 2021) (citing 29 U.S.C. § 794). As the Ninth Circuit reiterated in its order remanding

17   this case, in order to state a cognizable claim under Section 504 of the Rehabilitation Act, a

18   plaintiff must sufficiently allege that: "(1) [s]he is an individual with a disability; (2) [s]he is

19   otherwise qualified to receive the benefit [of a program]; (3) [s]he was denied the benefits of the

20   program solely by reason of [her] disability; and (4) the program receives federal financial

21   assistance." (Doc. No. 124 at 6) (quoting *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir.

22   2017) (citation omitted)).

23           As to Plaintiff Areta, Defendant OMO emphasizes in its motion that there are simply no

24   allegations in the SAC that Defendant OMO denied any services to Plaintiff Areta. (Doc. No.

25   136-1 at 4, 7.) Rather, the SAC alleges that OMO denied services only to Plaintiff Aleta. (*Id.*)

26   Defendant OMO therefore argues that Plaintiff Areta's Section 504 claim is insufficiently alleged

27   and should be dismissed. (*Id.*) Plaintiff Areta does not address, let alone rebut, this argument in

28   her opposition brief. In its reply brief, Defendant OMO urges the court to dismiss Plaintiff Areta's

claim without leave to amend, noting that "neither Plaintiff has opposed [its] argument that the SAC fails to allege a [Section 504 claim] on behalf of Areta." (Doc. No. 139 at 4–5.) The court agrees with Defendant OMO that Plaintiff Areta has not alleged any facts in the SAC to support her Section 504 claim against Defendant OMO. It is also telling that neither Plaintiff responded to Defendant OMO's arguments as to Plaintiff Areta's claim. Accordingly, because the court finds Plaintiff Areta has not alleged a cognizable Section 504 claim, Defendant OMO's motion to dismiss Plaintiff Areta's claim will be granted, without leave to amend.

As to Plaintiff Aleta, Defendant OMO argues that, even assuming the first two elements of the Section 504 claim are sufficiently alleged (i.e., that Plaintiff Aleta is an individual with disabilities and is otherwise qualified to receive benefits), Plaintiff Aleta fails to allege facts to satisfy the third and fourth elements. (Doc. No. 136-1 at 7.) That is, according to Defendant OMO, Plaintiff Aleta's "claim necessarily fails because Aleta has not alleged that she was denied benefits *solely* by reason of her disability," and Plaintiff Aleta fails to plead sufficient facts to demonstrate OMO receives federal financial assistance. (*Id.*) The court will address the parties' arguments as to each of these challenged elements in turn.

A.     **Denial of Benefits Solely by Reason of Disability**

Section 504 of the Rehabilitation Act provides as follows: "No otherwise qualified individual with a disability in the United States, . . . , shall, s*olely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added).

In the SAC, under the heading for Plaintiffs' Rehabilitation Act claim against Defendant OMO, Plaintiffs allege that Defendant OMO "denied Aleta access the [sic] array of community services she needs and have excluded her from participation in, denied her the benefits of, and otherwise subjected her to discrimination under programs and activities receiving federal financial assistance, in violation of section 504 and its implementing regulations." (Doc. No. 69 at ¶ 272.) Plaintiffs also allege that "[f]ailing to provide the community and Supported Living Services resulted in unnecessary isolation and risk of out of home placement of Aleta which

1    constitutes discrimination under section 504." (*Id.* at ¶ 273.) Further, Plaintiffs allege

2    "Defendant's policies and practices precluded the availability of provision of integrated, stable

3    and equally available community living for Aleta." (*Id.* at ¶ 274.) But noticeably absent from

4    Plaintiffs' Rehabilitation Act allegations is any assertion or supporting facts to show that Plaintiff

5    Aleta was denied OMO's services based solely on her disability—an essential element for her

6    Section 504 claim. Rather, as noted above and as Defendant OMO correctly points out in their

7    motion and reply brief (Doc. Nos. 136-1 at 8; 139 at 8), Plaintiffs' only factual allegation

8    regarding why Defendant OMO terminated services for Aleta is as follows: "McGlade notified

9    [Plaintiff Areta] that On My Own was terminating services for Aleta in retaliation for [Plaintiff

10   Areta's] advocacy on Aleta's behalf . . ." (Doc. No. 69 at ¶ 55.) Notably, this allegation does not

11   mention Plaintiff Aleta's disability as *a reason* for the denial of services, let alone the *sole*

12   *reason*. By contrast, in their allegations against Defendant STEP, Plaintiffs allege that Plaintiff

13   Aleta's disability was one of several reasons, specifically alleging that Defendant STEP informed

14   Defendant Alta that "Aleta was being denied services because of [Plaintiff Areta's] advocacy and

15   'philosophy,' and because of Aleta's care needs." (*Id.* at ¶ 68.)

16          Thus, the court finds that Plaintiff has not sufficiently alleged that any denial of services

17   by Defendant OMO was based solely on her disability, as required for a Section 504 claim. While

18   this finding is sufficient to grant Defendant OMO's motion to dismiss, the court will nevertheless

19   briefly address the fourth essential element—receipt of federal financial assistance.

20   **B.      Receipt of Federal Financial Assistance**

21          "Broad allegations that all Defendants received public funding, without more, cannot

22   support a cause of action under Section 504." *McElroy ex rel. McElroy v. Tracy Unified Sch.*

23   *Dist.*, No. 2:07-cv-00086-MCE-EFB, 2008 WL 4754831, at *5 (E.D. Cal. Oct. 29, 2008).

24   "Although a complaint need not contain detailed factual allegations, it does have to do more than

25   formulaically recite, in conclusory fashion, the elements of a cause of action under § 504." (*Id.*)

26          With regard to this fourth element, "Congress intended to strictly limit the scope of the

27   [Rehabilitation Act] solely 'to those who actually "receive" federal financial assistance.'" *Castle*

28   *v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (quoting *U.S. Dep't of Transp. v. Paralyzed*

1    *Veterans of Am.*, 477 U.S. 597, 605 (1986)). "Consequently, while those who affirmatively

2    choose to receive federal aid may be held liable under the [Rehabilitation Act], liability will 'not

3    extend as far as those who benefit from it,' because application of § 504 to all who benefit

4    economically from federal assistance would yield almost 'limitless coverage.'" *Castle*, 731 F.3d

5    at 908–09 (quoting *Paralyzed Veterans*, 477 U.S. at 607–08).

6    "[T]he Rehabilitation Act covers only the recipients of federal financial assistance and not

7    the recipients of compensatory payments for services." *Logan v. United States*, 103 F.3d 139, at

8    *2 (9th Cir. 1996) (citing *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209–10 (9th Cir.

9    1984) (explaining that "purely compensatory payments" do not constitute "Federal financial

10   assistance")). However, "payments that include a subsidy constitute 'Federal financial assistance'

11   within the meaning of the Rehabilitation Act." *Jacobson*, 742 F.2d at 1209.

12   Here, Plaintiffs allege in conclusory fashion that "[a]t all relevant times [Defendant OMO]

13   has received state and federal funds." (Doc. No. 69 at ¶ 10.) Plaintiffs also allege in conclusory

14   fashion that Defendant OMO is "a recipient of federal financial assistance within the meaning of

15   29 U.S.C. Section 794(b), including federal Medicaid (Medi-Cal) funds and targeted case

16   management funds under Title XIX of the Social Security Act." (Doc. No. ¶ 271.) This allegation

17   is not specific to Defendant OMO and lacks any supporting facts. Notably, this same allegation is

18   included verbatim in the sections of the SAC alleging Rehabilitation Act claims against

19   Defendants Alta and STEP. (*Id.* at ¶¶ 263, 279.) In addition, in opposing the pending motion,

20   Plaintiffs contend that Defendant OMO's receipt of federal financial assistance can be inferred

21   from their allegations that Defendant Alta received state and federal funding and made payments

22   to their vendors, including Defendant OMO. (Doc. No. 137 at 9) (citing Doc. No. 68 at ¶¶ 26–27).

23   But Plaintiffs' contention is simply not supported by applicable law. Critically, Plaintiffs do not

24   allege any facts to show the payments Defendant OMO received from Defendant Alta were

25   payments that included subsidies, rather than compensatory payments for services. Thus,

26   Plaintiffs have not sufficiently alleged the requisite fourth element of their Section 504 claim. *See*

27   *Est. of Mejia v. Archambeault*, No. 20-cv-2454-MMA-KSC, 2021 WL 4428990, at *9 (S.D. Cal.

28   Sept. 27, 2021) ("To constitute 'federal financial assistance' for the purposes of the Rehabilitation

1    Act, payments to [Defendant] CoreCivic must involve a subsidy," and "Plaintiffs allege only that

2    'Defendant CoreCivic is a program that received federal financial assistance as defined in 29

3    U.S.C. § 794(b)," [] but provide no facts raising an inference that CoreCivic receives a subsidy.)

4           For these reasons, the court finds that Plaintiffs have failed to sufficiently allege facts to

5    satisfy two essential elements of their Section 504 claim. Accordingly, the court will grant

6    Defendant OMO's motion to dismiss.

7           The only remaining question is whether the court should also grant Plaintiffs leave to file

8    a third amended complaint. The court recognizes that leave to amend should be granted "freely"

9    when justice so requires. Fed. R. Civ. P. 15(a). Further, the Ninth Circuit maintains a policy of

10   "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v.

11   Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Here, however, the Ninth Circuit has already weighed

12   in on this court's decision to deny Plaintiffs an opportunity to file a third amended complaint and

13   found the court did not abuse its discretion in denying Plaintiffs further leave to amend. (Doc. No.

14   124 at 8.) In addition, in their opposition to Defendant OMO's motion to dismiss, Plaintiffs do

15   not request that further leave to amend be granted nor proffer any additional allegations that they

16   would include in a third amended complaint. Finally, given that Plaintiffs allege in their SAC that

17   the reason Defendant OMO denied benefits to Plaintiff Aleta was in retaliation for Plaintiff

18   Areta's advocacy, Plaintiffs would not be able to cure that pleading deficiency by alleging—in

19   good faith—that Plaintiff Aleta's disability was the sole reason Defendant OMO denied her

20   benefits. Thus, granting further leave to amend would also be futile. Consequently, the court will

21   grant Defendant OMO's motion to dismiss, without leave to amend, and will dismiss Defendant

22   OMO from this action.

23                                        **CONCLUSION**

24          For the reasons explained above:

25   1.     Defendant On My Own Independent Living Services, Inc.'s motion to dismiss

26          Plaintiff Areta Guthrey's Section 504 claim brought against it (Doc. No. 136) is

27          GRANTED, without leave to amend;

28   2.     Defendant On My Own Independent Living Services, Inc.'s motion to dismiss

1            Plaintiff Aleta Guthrey's Section 504 claim brought against it (Doc. No. 136) is

2            GRANTED, without leave to amend;

3    3.    Because all claims brought against Defendant OMO have been dismissed without

4            leave to amend, Defendant On My Own Independent Living Services, Inc. is

5            DISMISSED from this action; and

6    4.    The Clerk of the Court is directed to update the docket to reflect that Defendant On

7            My Own Independent Living Services, Inc. has been terminated from this action.

IT IS SO ORDERED.

Dated:   __May 1, 2025__

Dena Coggins
United States District Judge

13